UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE: | ) CHAPTER 7 |
| | ) |
| ANTHONY TROY COWGILL, | ) CASE NO. 08-60285 |
| | ) |
| Debtor. | ) JUDGE RUSS KENDIG |
| | ) |
| | ) |
| | ) MEMORANDUM OF OPINION |
| | ) (NOT INTENDED FOR |
| | ) PUBLICATION) |

On June 6, 2008, Debtor filed a motion for contempt against creditor Westlake Financial (hereafter "Westlake") alleging that Westlake committed a wilful violation of the automatic stay when it repossessed collateral, a 1999 Dodge Caravan. Westlake, relying on 11 U.S.C. §§ 521(a)(2)(B) and 362(h)(1)(B), denies that a violation of the stay occurred. The Court held an evidentiary hearing on September 4, 2008. Subsequently, each party submitted a legal brief of their positions.

The court has jurisdiction of this matter pursuant to 28 U.S.C. §§ 1334 and the general order of reference entered in this district on July 16, 1984. Venue in this district and division is proper pursuant to 28 U.S.C. § 1409. The following constitutes the court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052. The Court has considered the testimony of the two witnesses and the documentary evidence introduced at the hearing, as well as the related pleadings.

This opinion is not intended for publication or citation. The availability of this opinion, in electronic or printed form, is not the result of a direct submission by the court.

## FACTS

There is no dispute over the relevant facts. Debtor filed a chapter 7 bankruptcy case on February 6, 2008. In his petition, he listed a debt to Westlake in the amount of $3,961.00, secured by a lien on the title to a 1999 Dodge Caravan. In his statement of intention, filed with the petition on February 6, 2008, Debtor indicated he would reaffirm the debt on the van. No reaffirmation agreement was executed.

The section 341 meeting of creditors was scheduled, and conducted, April 3, 2008. Westlake repossessed the van on May 5, 2008.

Other facts were introduced through the testimony of two witnesses, Debtor Anthony Troy Cowgill and Vai Moliga, the manager of the bankruptcy department for Westlake, and by the admission of documentary evidence. After listening to the testimony of the witnesses, who were both credible, and reviewing the evidence, the Court finds that Debtor's counsel sent two letters, one dated February 7, 2008 and one dated March 4, 2008, to Westlake

requesting reaffirmation of the debt. Neither of these letters was noted in the collection notes maintained by the Westlake bankruptcy department. Additionally, Debtor communicated his desire to retain the van to employees of Westlake and this intent is recorded in the collection notes. Following the first noted contact by Debtor, Westlake attempted to contact Debtor's counsel and left a voice mail message. The collection notes have various entries that could be the subject of interpretation.

The parties also developed facts related to Debtor's account with Westlake. Debtor purchased the van on November 20, 2007 from Weidner Motors. Debtor's first payment of $221.78 was due on January 4, 2008. A title in Debtor's name, with Westlake identified as the first lienholder, was issued on November 28, 2007. Debtor made his first payment on January 3, 2008 and a second payment on February 1, 2008. Debtor did not make any payments on the account during the bankruptcy and the account was thereby in default post-petition.

## LAW

This conflict is governed by 11 U.S.C. § 521(a)(2)(A) and 11 U.S.C. § 362(h). The former requires Debtor to file a statement of intention related to secured property:

> (2) if an individual debtor's schedule of assets and liabilities includes debts which are secured by property of the estate---
>
> > (A) within thirty days after the filing of a petition under chapter 7 of this title or on or before the date of the meeting of creditors, whichever is earlier, or within such additional time as the court, for cause, within such time period fixes, the debtor shall file with the clerk a statement of intention with respect to the retention or surrender of the property and, if applicable, specifying that such property is claimed as exempt, that the debtor intends to redeem such property, or that the debtor intends to reaffirm debts secured by such property.

11 U.S.C. § 521(a)(2)(A). Debtor timely fulfilled his duties under this provision with the filing of the Statement of Intention on February 6, 2008. Upon execution of the statement of intention, section 521(a)(2)(B) further requires a debtor to:

> > (B) within 30 days after the first date set for the meeting of creditors under section 341(a), or within such additional time as the court, for cause, within such 30-day period fixes, the debtor shall perform his intention with respect to such property, as specified by subparagraph (A) of this paragraph . . . .

The logical reading of this provision, applied to the facts of this case, is that Debtor was required by reaffirm the debt on the van by May 3, 2008.

The core of the dispute between the parties is what action constitutes performance of the expressed intention. Through his arguments, Debtor postulates that his attempt to reaffirm the debt, through his requests for a reaffirmation agreement from Westlake, satisfied his duties under the bankruptcy code. Although not cited by Debtor, there is support for this position. *See, e.g.,* Pacific Capital Bancorp v. Schwass (In re Schwass), 378 B.R. 859, 862 (Bankr. S.D. Cal. 2007) (finding that "where . . . a debtor has timely filed a statement of intention to reaffirm, she complies with the requirement to 'perform' such intention under subsection 521(a)(2)(B) by standing ready and willing to execute the reaffirmation agreement"). Debtor contends that "[r]eaffirmation [a]greements are always prepared by creditors since the creditor is aware of the applicable interest, principal [sic], and late fees relating to a contract."[1] (Debtor's Post-Hearing Brief, p. 3). Essentially, Debtor uses Westlake's inaction as a defense for his failure to do anything else.

Westlake, on the other hand, suggests that the absence of a filed reaffirmation agreement results in a failure to perform the intention in accordance with section 521(a)(2)(B), thereby resulting in termination of the automatic stay as set forth in 11 U.S.C. § 362(h), and cites In re Anderson, 348 B.R. 652 (Bankr. D. Del. 2006). *See also* In re Parker, 363 B.R. 621 (Bankr. M.D. Fla. 2007) (discussing performance when the debtors intend to exercise the redemption option). Consequently, the issue is legal, not factual.

Although Schwass supports Debtor, the Court declines to follow its reasoning. In Schwass, the parties' counsel were at an impasse regarding which party had the burden to prepare the reaffirmation agreement. Relying primarily on 11 U.S.C. § 524(k), the Schwass court found that the creditor was responsible for preparation of a reaffirmation agreement and debtor's willingness to sign a reaffirmation agreement executed by the creditor satisfied the performance requirement of section 521(a)(2)(B). The Court finds that the effect of Schwass renders section 521(a)(2)(B) virtually meaningless and cannot conclude that a mere willingness to sign a reaffirmation agreement reaches the "performance" contemplated by the statute. A statute must be interpreted 'as a whole, giving effect to each word and making every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless or superfluous.' Cafarelli v. Yancy, 226 F.3d 492, 499 (6th Cir. 2000) (quoting Lake Cumberland Trust, Inc. v. EPA, 954 F.2d 1218, 1222 (6th Cir. 1992)).

Under Schwass, the only action required by a debtor is the filing of a statement of intention. Although some courts have found that performance is not necessarily the equivalent of a validly executed, approved reaffirmation agreement, the cases generally involve at least a draft of a reaffirmation agreement. *See, e.g.,* In re Chim, 381 B.R. 191 (Bankr. D. Md. 2008) (debtor timely filed her statement of intention and reaffirmation agreement but court declined to approve the reaffirmation agreement; court found this

---

[1] It is logical to promote and encourage creditors to supply reaffirmation agreements for the reasons cited by Debtor.

immaterial to "performance" under section 521(a)(2)(A)); In re Husain, 364 B.R. 211, 218 (Bankr. E.D. Va. 2007) (debtors executed reaffirmation agreements but counsel would not sign Part C; court found that the "performance requirements should not be read as a mandate for debtors to entirely consummate their stated intentions" (citations omitted)); In re Hinson, 352 B.R. 48, 50 (Bankr. E.D.N.C. 2006) (parties circulated a reaffirmation agreement which the creditor ultimately refused to sign because debtor would not agree to the fees charged for the reaffirmation agreement; court concluded that the steps taken by debtor were sufficient to "act on an intention to either retain or surrender" thereby satisfying performance requirement).

While the Anderson case cited by Westlake is not directly on point, it is factually similar in that the debtors indicated an intent to reaffirm the debt and never executed a reaffirmation agreement. Instead, the debtors attempted to "retain and pay" for the property. According to the Anderson court, the failure to perform invoked 11 U.S.C. § 362(h) whereby the automatic stay terminated, allowing creditor to repossess the collateral. These facts are more akin to those present in this case. In Anderson, in spite of their continued payments, the debtors were found to have failed to perform the intended act, reaffirmation of the debt. Here, in spite of requests for a reaffirmation agreement, an agreement was not executed.

Neither line of cases is overwhelmingly convincing, however. Looking at the statute, the Court finds that the language of the statute is straightforward: "the debtor shall perform his intention with respect to such property." 11 U.S.C. § 521(a)(2)(B). When the language of a statute is clear and unambiguous, a court should not delve beyond that meaning. See Bartlik v. U.S. Dep't of Labor, 62 F.3d 163 (6th Cir. 1995) (citing U.S. v. Ron Pair Enters., Inc., 489 U.S. 235, 242 (1989)). The statute clearly places a duty of performance on the Debtor. In order to meet his obligation, a debtor must take steps to carry out the stated intent. In this case, there is no dispute that the debt was not reaffirmed and the Court finds that Debtor's actions did not rise to the level of "performance" of his obligation. However, section 521(a)(2)(B) only outlines the Debtor's duties; it was not the basis for creditor action.

Any understanding of section 521(a)(2)(B) must comport with the related provision, section 362(h). Section 362(h) provides the remedy for debtor's failure to timely act under section 521(a)(2): automatic termination of the stay upon expiration of the deadlines found in section 521(a)(2). See 11 U.S.C. § 362(h)(1)(B). This was the basis for Westlake's action.

11 U.S.C. § 362(h)(1)(B) offers debtors an "out" to the automatic termination when compliance is hindered by a creditor: the stay will not terminate if the debtor has either timely taken "the action specified in such statement [of intention] . . . unless such statement [of intention] specifies the intention to reaffirm such debt on the original contract terms and the creditor refuses to agree to the reaffirmation on such terms." 11 U.S.C. § 362(h)(1)(B). Thus, in the absence of a filed reaffirmation agreement, a debtor can avoid the termination of the stay by amending the statement of intention to indicate his willingness, and a creditor's refusal, to enter into a reaffirmation agreement on the

contract terms.[2] Debtor's failure to comply with this provision was the impetus for termination of the stay.

Here, Debtor filed a statement of intention indicating that he desired to reaffirm the debt but the debt was not reaffirmed and Debtor never made an effort conforming with 11 U.S.C. § 362(h)(1)(B), nor was he making payments. In order to successfully avoid termination of the stay, the Court finds a debtor must, at a minimum, attempt to enter into "an agreement of the kind specified in section 524(c)" or amend the statement of intention in accordance with section 362(h)(1)(B). Failure to do so opens a debtor to a creditor exercising its rights under 11 U.S.C. § 362(h).

Debtor's failure to comply with section 362(h)(1)(B) resulted in termination of the automatic stay. As a result, Creditor's repossession of collateral did not violate the automatic stay. Consequently, Debtor's contention that Westlake wilfully violated the stay is not well-taken and the motion for contempt is denied.

This is not to say that the Court cannot imagine a scenario in which the creditor would be found to have violated the stay. One such scenario might be one in which the creditor misleads the debtor as to its intent and course of action in order to run the debtor out of time and strike. Other fact patterns are imaginable, but no such facts are present and the literal terms of the statutes impel the conclusion.

An order will be issued in accordance with this opinion.

/s/ Russ Kendig
_____
JUDGE KENDIG
U.S. BANKRUPTCY JUDGE

---

[2] Creditors should not be prejudiced by this type of last-minute amendment to the statement of intention. Section 521(a)(2)(B) requires performance (execution of a reaffirmation agreement) within thirty days of the first date set for the meeting of creditors. Under 11 U.S.C. § 524(c)(1), a reaffirmation agreement must be made before discharge. Pursuant to Rule 4004(a), parties must be given sixty days from the first date set for the meeting of creditors for objections to discharge. As a result, the parties will still have a minimum of thirty days from an amended statement of intention to file a reaffirmation agreement. Of course, the creditor also has the option of filing a motion for relief from stay if the facts warrant.

**Service List**:

William C Fithian, III
111 N Main St
Mansfield, OH 44902

Waymon B. McLeskey, II
McLeskey & Associates
8 East Long St., Suite 424
Columbus, OH 43215-2914